**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **FUTUREWEI TECHNOLOGIES, INC.** | § | |
| **d/b/a HUAWEI TECHNOLOGIES (USA),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **E. OLIVER CAPITAL GROUP, LLC, MIO** | § | |
| **GROUP LTD., MIO GROUP** | § | |
| **INCORPORATED, and GILBERT R.** | § | |
| **ARMENTA, Individually,** | § | |
| | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT

COMES NOW, FutureWei Technologies, Inc. d/b/a Huawei Technologies (USA) ("Plaintiff" or "FutureWei"), Plaintiff in the above-entitled cause, and for its Complaint against Defendants E. Oliver Capital Group LLC ("EOCG"), MIO Group Ltd. ("MIO Ltd."), MIO Group Incorporated ("MIO Inc."), and Gilbert R. Armenta ("Armenta") (collectively referred to herein as "Defendants"), states as follows:

### INTRODUCTION

1.      This action arises out of a fraudulent scheme involving millions of dollars. On information and belief, Defendant Gilbert Armenta was the architect and mastermind of the scheme. Armenta perpetuated his fraud by creating the appearance that his company, EOCG, owned and controlled a large enterprise of legitimate, well-financed telecommunications companies throughout the Caribbean. To be the industry leader, however, Armenta claimed he needed new infrastructure and equipment from FutureWei. Armenta thus approached FutureWei and after several months of what turned out to be fraudulent and misleading representations, FutureWei entered into a multi-million dollar equipment and infrastructure contract with EOCG.

Armenta, however, signed the contract knowing it would never fully be honored.   Instead, upon information and belief, Armenta concocted a plan to knowingly funnel all revenues associated with the use of the infrastructure and equipment to the newly created MIO Defendants who were not under the EOCG umbrella.  Then, with the revenues going to the MIO Defendants, Armenta could claim EOCG was strapped for cash and unable to meet its contractual obligations.  Upon information and belief, Armenta deliberately caused EOCG's undercapitalization to deprive FutureWei of its ability to collect the millions owed while Armenta and his other "companies" profited from the use of the telecommunications equipment and infrastructure for which EOCG never paid.

### STATEMENT OF CLAIMS

2.      To induce FutureWei to enter into the telecommunication equipment, infrastructure and services contract, Armenta actively solicited FutureWei and mischaracterized the nature and extent of his and his companies' financial stability and strength.  He offered misleading letters of reference, and disingenuously portrayed EOCG's present and anticipated future success in the telecommunications market in the Caribbean Islands.   Misled by Armenta's supposed experience, expertise and financial backing, FutureWei began the complex and multifaceted planning, manufacturing, and installation process that would span more than half a year. Unbeknownst to FutureWei, Armenta, upon information and belief, had no intention of ever fully paying for FutureWei's extensive and comprehensive services and state-of-the-art telecommunication equipment and technology.

3.      While FutureWei finalized the installation and launch of the first phase of the telecommunications infrastructure, a process six months in the making, Armenta and/or EOCG refused to tender any of the financial payments due or the letter of credit under the contractual

agreement.   Instead, Armenta perpetuated his fraud by creating a new corporate entity, MIO Group Incorporated (MIO Inc.), which immediately announced the launch of telecommunication services in the Caribbean Islands through what Armenta and MIO Inc. characterized as their *own* integrated global IP-based network.   Upon information and belief, Armenta poised MIO Inc. to systematically misappropriate and convert FutureWei's telecommunications infrastructure and equipment and to use the network to generate revenues and profits while leaving EOCG grossly undercapitalized and unable to meet its contractual obligations.

4.      At the same time Armenta was apparently using the networks and generating revenues for the MIO Defendants, Armenta was telling FutureWei a series of sad stories and false promises about EOCG's financial difficulties and potential financing that was always "on the horizon".   Armenta repeatedly promised to fulfill all contractual financial obligations and pay all the outstanding amounts due to entice FutureWei to continue providing technical support and software upgrades.   In reliance upon these and other misrepresentations, and in an effort to continue the business relationship, FutureWei eventually agreed to extend the terms for the outstanding payments and further agreed to continue the manufacture, assembly, and installation of the telecommunications infrastructure until its final completion.   Ultimately, Armenta's promises began to ring hollow.   Armenta never tendered all payments due.   Yet, Armenta and the MIO Defendants continue to use FutureWei's telecommunications infrastructure and equipment, and continue to funnel all profits from the use of the networks to the MIO Defendants.

5.      Through his conduct, it is believed that Armenta intended to encumber EOCG with contractual obligations to the point of insolvency while ensuring he, through the MIO Defendants, would reap the financial benefits secured by FutureWei's services and technology.

Armenta's corporations were merely pawns to unlawfully attain unjust enrichment and wealth at FutureWei's expense.  Armenta never intended to pay up.  He just intended to pay enough to get the networks installed so he could use them without ever fully paying for them.

6.      For these reasons, FutureWei brings this case against the Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), and for breach of contract, quantum meruit, conversion, fraud, and fraudulent transfer.

<u>**PARTIES**</u>

7.      Plaintiff FutureWei Technologies, Inc. is a corporation organized under the laws of the State of Texas whose principal place of business is in Plano, Collin County, Texas.

8.      Defendant E. Oliver Capital Group, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Fort Lauderdale, Broward County, Florida, and which does business in the State of Texas.   EOCG is engaged in activities affecting federal interstate and/or foreign commerce.  EOCG is a "person," as that term is defined pursuant to 18 U.S.C. § 1961(3).   EOCG may be served with process by serving its registered agent, Megan McCarthy, at 200 South Andrews Avenue, Suite 200, Fort Lauderdale, Florida  33301.

9.      Defendant MIO Group, Ltd. is a corporation organized under the laws of the State of Florida with its principal place of business in Fort Lauderdale, Broward County, Florida. Throughout the scheme to defraud FutureWei, MIO Ltd. acted through Armenta, its CEO and agent as well as conspirator.  MIO Ltd. is engaged in activities affecting federal interstate and/or foreign commerce.   MIO Ltd. is a "person," as that term is defined pursuant to 18 U.S.C. § 1961(3).  Defendant MIO Ltd. may be served with process by serving its registered agent, Megan McCarthy, at 200 S. Andrews Avenue, Suite 200, Fort Lauderdale, Florida 33301.

10.     Defendant MIO Group Incorporated is a corporation organized under the laws of the State of Florida with its with its principal place of business in Fort Lauderdale, Broward County, Florida.   Throughout the scheme to defraud FutureWei, MIO Inc. acted through Armenta, its President and agent as well as conspirator. MIO Inc. is engaged in activities affecting federal interstate and/or foreign commerce.   MIO Inc. is a "person," as that term is defined pursuant to 18 U.S.C. § 1961(3). Defendant MIO Inc. may be served with process by serving its registered agent, Megan McCarthy, at 200 S. Andrews Avenue, Suite 200, Fort Lauderdale, Florida 33301.

11.     Defendant Gilbert R. Armenta is an individual who, on information and belief, resides in Fort Lauderdale, Broward County, Florida, and who does business in the State of Texas. Armenta is engaged in activities affecting federal interstate and/or foreign commerce.   Armenta is a "person," as that term is defined pursuant to 18 U.S.C. § 1961(3).   Defendant Armenta may be served with process by serving him at 200 S. Andrews Avenue, Suite 200, Fort Lauderdale, Florida 33301.

12.     On information and belief, Defendant Armenta, as Chief Executive Officer of EOCG, Chief Executive Officer of MIO Ltd., and President of MIO Inc., was at all relevant times an agent of EOCG, MIO Ltd., and MIO Inc.   In the acts alleged herein, Armenta purported to be acting on behalf of the corporate Defendants and purported to be acting with the actual or apparent authority of the corporate Defendants.   Upon information and belief, Armenta's deceptive and illegal acts in furtherance of the scheme enriched him and the other corporate Defendants.   Upon information and belief, Armenta, EOCG, MIO Ltd., and MIO Inc. acted in furtherance of the conspiracy.   Armenta also acted through other employers and agents, including EOCG, MIO Ltd., and MIO Inc.

## JURISDICTION AND VENUE

13.     The present suit is an action over which this Court has jurisdiction pursuant to 28 U.S.C.
§ 1332, because the matter in controversy exceeds the sum of $75,000 and the parties are citizens
of different states.   This Court also has subject matter jurisdiction over certain claims herein
pursuant to 18 U.S.C. § 1964, and 28 U.S.C. § 1331, because they arise under the laws of the
United States and over other claims herein pursuant to supplemental jurisdiction, 28 U.S.C. §
1367, *Tafflin v. Levitt*, 493 U.S. 455 (1990).

14.     This Court has jurisdiction over Defendant EOCG, a non resident, because EOCG has
purposefully availed itself of the privilege and benefits of conducting business in the State of
Texas by engaging in business in Texas by actively soliciting the business of a Texas resident
(FutureWei); by contracting through mail with a Texas resident (FutureWei) through its
authorized agent, Armenta; by sending its employees and executives to Texas to participate in
business meetings related to the subject contract; and by depositing funds due under the subject
contract into a Texas bank.   Moreover, there is such unity of interest and ownership between
Armenta and EOCG that the separate personalities of the corporation and the individual no
longer exist.   Accordingly, Armenta's contacts with the State of Texas can be attributed to
EOCG for purposes of jurisdiction.

15.     This Court has jurisdiction over Defendant MIO Ltd., a non resident, because MIO Ltd.
has purposefully availed itself of the privilege and benefits of conducting business in the State of
Texas by interjecting itself into the business negotiations and agreements of the subject contract
(*see, e.g.* Exhibit "1")   and by engaging in business in Texas through its authorized agent,
Armenta.   Moreover, there is such unity of interest and ownership between Armenta and MIO
Ltd. that the separate personalities of the corporation and the individual no longer exist.

Accordingly, Armenta's contacts with the State of Texas can be attributed to MIO Ltd. for purposes of jurisdiction.

16.     This Court has jurisdiction over Defendant MIO Inc., a non resident, because MIO Inc. has purposefully availed itself of the privilege and benefits of conducting business in the State of Texas by engaging in business in Texas through its authorized agent, Armenta.  Moreover, there is such unity of interest and ownership between Armenta and MIO Inc. that the separate personalities of the corporation and the individual no longer exist.  Accordingly, Armenta's contacts with the State of Texas can be attributed to MIO Inc. for purposes of jurisdiction.

17.     This Court has personal jurisdiction over Defendant Armenta, a non resident, because Armenta has purposefully availed himself of the privilege and benefits of conducting business in the State of Texas by actively engaging in business in Texas by actively soliciting the business of a Texas resident (FutureWei); by contracting through mail with a Texas resident (FutureWei); by traveling to Texas on multiple occasions and meeting with FutureWei executives and employees to engage in substantive discussions about the parties' duties and obligations under the subject contract; and by doing business in Texas through continuous e-mail correspondence and telephone communications with a Texas resident (FutureWei).  Moreover, Armenta, individually and in his capacity as agent for EOCG, MIO Ltd, and MIO Inc., made repeated misrepresentations and committed unfair and improper business practices which had a profound effect in the Eastern District of Texas.  Further, given that EOCG, one of the companies for which Armenta acted for, was not viable or was undercapitalized, this Court may pierce the corporate veil and permit the assertion of personal jurisdiction over Armenta, because he was in fact conducting personal activities and using the corporate form as a shield.

18.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a) (2) and 18 U.S.C. § 1965(a).

**BACKGROUND**

**A.     The Parties**

19.     Incorporated in 2002, FutureWei is a global provider of next-generation, fixed mobile convergence and end-to-end wireless technology and equipment.   FutureWei has offices in Plano, Collin County, Texas.

20.     On information and belief, Defendant EOCG is a holding company for a group of operating entities active in the communications industry and whose activities are concentrated around Central America and the Caribbean basin.   Based on representations of Armenta, EOCG was in the business of acquiring telecommunications infrastructure and assets to provide telecommunications services through an intended complex network of wholly or partially owned subsidiary and affiliate corporations operating in the Caribbean.   Through Armenta, EOCG represented that it owned and operated networks in St. Maarten, Curacao, Bonaire and the British Virgin Islands.   In addition to wireless business, Armenta claimed EOCG provided video and movie content to hotels, cable companies, and mobile carriers.   During a September 2007 meeting at FutureWei's Texas offices, Defendant Armenta portrayed EOCG as a leading owner/operator of wireless networks in several Caribbean Islands ready to extend its business model into the entire Caribbean region if necessary equipment and infrastructure would be purchased from FutureWei.

21.     On information and belief, Defendant MIO Ltd. was set up and is controlled by Gilbert Armenta.   It is believed that MIO Ltd. operates telecommunications networks throughout the Caribbean and offers mobile voice, consumer and corporate broadband internet access, and international long distance amongst other telecommunication services to the general public.   On

information and belief, MIO Ltd. has thousands of voice and data subscribers in the Caribbean Islands and derives revenues from its subscribers as well as roaming revenues from non-subscribers generated while visiting the Caribbean markets.  On information and belief, all revenues of MIO Ltd. are generated through the unauthorized use of the telecommunications infrastructure and equipment supplied by FutureWei to EOCG.  According to its website, MIO Ltd. markets its wireless and voice services throughout the Caribbean under the generic brand name "MIO".  (See Miomania.com).

22.    On information and belief, Defendant MIO Inc. was/is a provider of wholesale and retail telecommunications services in the Caribbean region.  Like MIO Ltd., MIO Inc. is believed to have thousands of voice and data subscribers and derives revenue from its subscribers as well as roaming revenue from non-subscribers generated while visiting the Caribbean markets.  It is further believed that such revenues are generated through the unauthorized use of the telecommunications infrastructure and equipment supplied by FutureWei.  MIO Inc. also markets its wireless and voice services throughout the Caribbean under the brand name "MIO".

23.    On information and belief, at all relevant times hereto, Defendant Armenta was simultaneously acting as EOCG's and MIO Ltd.'s Chairman and Chief Executive Officer and MIO Inc.'s President.  In those capacities, he has/had the actual and/or apparent authority to negotiate and enter into business contracts on EOCG, MIO Ltd., and MIO Inc.'s behalf. Armenta is the sole controller and director of EOCG, which he formed in 2001, and claims to have personally invested millions of dollars into EOCG making him EOCG's majority stakeholder.  It is believed that Armenta owns approximately 85% of EOCG.  Armenta is also the sole controller and director of MIO Inc., which he formed in 2008 to facilitate the illegal use of FutureWei's telecommunications infrastructure and equipment.  All three corporate

defendants have the same corporate address and are believed to have the same officers and directors.

**B.  The FutureWei-EOCG Supply Contract**

24.  In early 2007, Defendant Armenta approached FutureWei Technologies, Inc. about a business proposal related to the installation and service of telecommunications equipment in several Caribbean Islands.  Specifically, Armenta sought to partner with FutureWei to secure the creation of a telecommunications infrastructure that would allow Armenta to profit from providing telecommunication services such as roaming capabilities to the residents and tourists of the Caribbean region.

25.  To secure FutureWei's business and its state-of-the-art equipment and technology, Armenta offered an array of financial statements that purportedly documented the financial strength of EOCG, a company supposedly controlled and owned in large part by Armenta himself.  Armenta provided an array of materials including a financing memorandum with a chart purporting to show EOCG's corporate structure and representing that EOCG owned and controlled over twenty subsidiary corporations throughout the Caribbean.  Armenta further held himself out as possessing significant expertise in the telecommunications market, and with the financial means and capital to comply with and meet the financial obligations provided for by any contract with FutureWei.  One of the documents indicated that Armenta had personally invested over $9 million dollars of his own money in these companies.

26.  To further entice FutureWei, Armenta also offered numerous letters of reference.  On January 30, 2007, Armenta presented FutureWei with a reference letter purportedly from Gibraltar Private out of Miami, Florida.  At Armenta's request, the bank stated that EOCG's bank accounts "maintained average balances in the six figures and as high as seven figures."

And on January 31, 2007, Armenta and EOCG presented FutureWei with another reference letter purportedly from Girobank out of Curacao, Netherlands Antilles.   At Armenta's request, Girobank noted that "E. Oliver Capital Group LLC and Gilbert Armenta have always conducted their relationship with [the] Bank in a positive, professional and trustworthy manner."  Girobank further indicated there was "no reason to believe" that Armenta or any of his companies "would enter into any commitment beyond their ability to fulfill and/or comply with any obligation (to be) assumed".

27.     Relying on Armenta's representations, and those made on his behalf, on August 22, 2007, FutureWei and EOCG entered into a Supply Contract for CDMA Infrastructure Systems (hereinafter  "Supply Contract").  Pursuant to the Supply Contract, FutureWei agreed to provide to EOCG certain manufactured equipment, software, and services to allow EOCG to provide telecommunication services to consumers in the Caribbean Islands. (*See* Supply Contract at p. 3). Specifically, FutureWei agreed to provide Core Network equipment (MSCe, MGW, HLR, BSC), Radio Access Network equipment (BTS), Packet Data Network equipment (PDSN, AAA), and Network Element Management System equipment (M2000) (hereinafter referred to as "CDMA Infrastructure Systems"). (*See* Article 2 of Supply Contract).  In return, Armenta and EOCG agreed to a specific and delineated payment schedule, which was memorialized in a letter from FutureWei to Gilbert Armenta dated August 17, 2007, and which was intended to incorporate the terms of the Supply Contract and thus binding on both EOCG and FutureWei.

28.     Shortly after the execution of the Supply Contract, FutureWei created a team of engineers to prepare a plan and strategy related to the logistics associated with the installation and assembly of the telecommunications infrastructure and equipment.   On or about August 23, 2007, a telephone conference took place wherein FutureWei and EOCG employees, including

Armenta, discussed proposed plans and strategies related to the installation and assembly process of the telecommunications infrastructure and equipment. That telephone conference was followed by a "kick-off" meeting at FutureWei's offices in Plano, Texas, which was attended by various FutureWei and EOCG employees, including Armenta.   Unbeknownst to FutureWei, however, the entire business plan, upon information and belief, was a complete sham.   Almost immediately, EOCG refused to tender any payments under the Supply Contract and further refused to secure a valid Letter of Credit.

**C.      Armenta's and EOCG's Breach of Contract - Letter of Credit**

29.      FutureWei began the manufacture, construction, assembly and installation of the first phase of the CDMA Infrastructure Systems in October 2007, and the second phase in November 2007. Shortly before completion of the first stage (in February 2008), FutureWei notified Armenta of an outstanding payment that related to a Purchase Order dated November 26, 2007.

30.      On February 21, 2008, EOCG Chief Operating Officer John Perry notified FutureWei that it should expect payment on February 29, 2008.   After failing to make that payment, Armenta notified FutureWei to expect payment on March 7, 2008.   After failing to make the March 7 payment, Armenta again informed FutureWei to expect payment between March 17 and 19, 2008.

31.      On March 20, 2008, FutureWei informed Armenta and/or EOCG that it had not yet received the promised March payment and that it had not yet received the Letter of Credit pursuant to the terms of the Supply Contract.   The absence of any response prompted FutureWei to make additional requests on March 25, 2008, March 28, 2008, April 2, 2009, April 28, 2008, May 5, 2008, and May 21, 2008. Throughout this period, and for several months thereafter, Armenta repeatedly made false assurances that the Letter of Credit was forthcoming.  (*See, e.g.*

Exhibit "2").  To date, Armenta and/or EOCG have yet to produce the Letter of Credit in breach of the Supply Contract.

**D.      Armenta and EOCG's Breach of Contract – Payment**

32.     Ensuring compliance with its part of the Supply Contract, FutureWei completed all phases of the assembly and installation of the CDMA Infrastructure Systems on or about May 2008.   At that time, Armenta and EOCG owed hundreds of thousands of dollars for services and quarterly interest on the equipment provided by FutureWei, which they refused to pay.

33.     After repeated unsuccessful attempts to secure the outstanding amounts due, on November 24, 2008, FutureWei made a formal written demand for all outstanding payments. (See Exhibit "3").  On December 1, 2008, EOCG and/or Armenta responded to FutureWei's written demand and stated that due to "tightening credit markets, the slowdown in consumer travel and purchasing, and the lingering impact of the summer hurricane season" EOCG and/or Armenta could not comply with the payments mandated under the Supply Contract.  (Contrary to these assertions, however, and unbeknownst to FutureWei, Armenta was, upon information and belief, securing profits and revenues from the use of the CDMA Infrastructure Systems through MIO Ltd. and/or MIO Inc., companies Armenta created after entering into the Supply Contract).

34.     On December 2, 2008, in a continued good-faith effort to secure all outstanding amounts due and reliance on Armenta's and/or EOCG's continued promises that payment was imminent and forthcoming, FutureWei agreed to extend the terms of the outstanding interest payments to enable EOCG and/or Armenta to become current on all of the outstanding interest payments through the Fourth Quarter of 2008.   This agreement was memorialized in a letter from FutureWei to Rich Wilkie of EOCG dated December 16, 2008.

35.     Although EOCG and/or Armenta made the first payment, FutureWei never received any additional interest payments in breach of the Supply Contract.

36.     EOCG and/or Armenta were further obligated to pay "80% of total equipment value of each Purchasing Order payable in 6 equal and consecutive quarterly installments". (*See* correspondence from FutureWei to Armenta dated August 17, 2007).  On January 21, 2009, FutureWei notified EOCG and Armenta that such payments would be due within the coming weeks.

37.     As a stalling tactic, knowing he would not be tendering the first payment, on January 30, 2009, Armenta notified FutureWei that he intended to meet with its executives and employees in Plano, Texas to discuss EOCG's and Armenta's growth plan and to share proposed financing plans and payment structures.  Although the meeting was confirmed for March 23, 2009, Armenta never showed up.

38.     For more than a year, Armenta and EOCG's executives repeatedly made empty promises and false assurances that the monies due under the Supply Contract would be paid.  Armenta and EOCG's executives offered excuse after excuse with the sole intent of exploiting FutureWei's fair business practices.   Despite repeated demands for payment, EOCG and Armenta intentionally and deliberately have refused to tender any payments or provide the Letter of Credit required by the terms of the Supply Contract.

**D.     Armenta and EOCG's Fraudulent Scheme: The Creation and Use of the MIO Defendants to Secure Hidden Profits From the Use of FutureWei's CDMA Infrastructure Systems**

39.     On information and belief, since on or about June 2009, Armenta, MIO Ltd. and MIO Inc. have been illegally using and converting FutureWei's CDMA Infrastructure Systems for profit.   This is no coincidence.   Upon information and belief, MIO Ltd. and MIO Inc. were

created as part of a larger fraudulent scheme devised and implemented by Gilbert Armenta to secure a state-of-the art telecommunications infrastructure at little or no cost.

40.     On information and belief, Armenta's fraudulent scheme began with the calculated and deliberate attempts to induce FutureWei into a multi-million dollar supply contract.  Contrary to all promises and assurances regarding payment, as evidenced by Armenta's consistent pattern of deceptive behavior, it is believed that Armenta and/or EOCG never intended to comply with the terms of the Supply Contract.  Court

41.     Instead, on June 19, 2008, at approximately the same time FutureWei launched the CDMA Infrastructure Systems, Armenta filed Articles of Incorporation for MIO Inc. believed for the sole purpose of gaining access to the telecommunications system and start generating revenues and profits from local subscribers.  On information and belief, EOCG, Armenta, MIO Inc. and MIO Ltd. thereafter entered into an agreement whereby MIO Inc. and MIO Ltd. would use FutureWei's CDMA Infrastructure Systems to deliver telecommunication services in the Caribbean Islands without compensating FutureWei.  Armenta and the MIO Defendants thus knowingly converted FutureWei's state-of-the art equipment and technology.

42.     On information and belief, all profits generated from the use of FutureWei's CDMA Infrastructure Systems have been/are purposefully diverted to either Armenta, MIO Inc. or MIO Ltd.  As a result of the Defendants' fraudulent pattern of conduct, it is believed that MIO Inc. and Mio Ltd (and by extension Armenta) have or intended to generate millions of dollars while EOCG continues to claim is unable to secure any funds necessary to meet its contractual obligations to FutureWei.

## CAUSES OF ACTIONS

### COUNT ONE
Conduct and Participation in a RICO Enterprise
Through a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(c) As to All Defendants

43.     FutureWei incorporates by reference Paragraphs 1 through 43 as if fully repeated here.

44.     At all times relevant to this Complaint, FutureWei was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

45.     At all times relevant to this Complaint, Defendants EOCG, MIO Ltd., MIO Inc., and Armenta were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

46.     At all times relevant to this Complaint, Defendants constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1941(4) and 1962(c), and where engaged in activities affecting interstate commerce.

47.     At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

48.     At all relevant times, Defendants associated with the enterprise and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

49.     Specifically, at all relevant times, Defendants engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above.  Defendants each were and are associated with the enterprise and have conducted or participated, directly or indirectly, in the management and operation of the affairs of the enterprise in relationship to FutureWei through a pattern of activity unlawful under 18 U.S.C. §§ 1961(A), to wit: multiple, repeated, and continuous violations of 18 U.S.C. § 1029 (relating to fraud and related activity in

connection with access devises), and 18 U.S.C. §§ 2314-3415 (relating to interstate transportation of stolen property).

50.     The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).  The acts alleged were related to each other by virtue of common participants, a common victim (FutureWei), a common method of commission, and the common purpose and common result of defrauding FutureWei of millions of dollars and enriching Defendants at FutureWei's expense while concealing the Defendants' fraudulent activities.

51.     As a result of the Defendants' violation of 18 U.S.C. § 1962(c), FutureWei has suffered substantial injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of 18 U.S.C. § 1962(c) committed by the Defendants, including but not limited to lost or reduced profits, and lost or diminished equipment valuation.

52.     As a result of their misconduct, Defendants are liable to FutureWei for its losses in an amount to be determined at trial.

53.     Pursuant to RICO, 18 U.S.C. § 1964(c), FutureWei is entitled to recover threefold its damages plus costs and attorneys' fees from Defendants.

COUNT TWO
Conspiracy to Engage in a Pattern of
Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(d) As to All Defendants

54.     FutureWei incorporates by reference Paragraphs 1 through 54 as if fully repeated here.

55.     At all times relevant to this Complaint, FutureWei was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3) and 1964(c).

56.     At all times relevant to this Complaint, Defendants were each a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(d).

57.     At all times relevant to this Complaint, Defendants constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1941(4) and 1962(c), and where engaged in activities affecting interstate commerce.

58.     At all relevant times, Defendants each were and are associated with the enterprise and conspired within the meanings of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c), that is, Defendants conspired to conduct or participate, directly or indirectly, in the management and operation of the affairs of the MIO Defendants through a pattern of activity unlawful under 18 U.S.C. § 1961, to wit: multiple, repeated, and continuous violations of 18 U.S.C. § 1029 (relating to fraud and related activity in connection with access devises), and 18 U.S.C. §§ 2314-3415 (relating to interstate transportation of stolen property).

59.     As a result of the Defendants' violation of 18 U.S.C. § 1962 (d), FutureWei has suffered substantial injury to its business or property within the meaning of 18 U.S.C. § 1964(d) by reason of the violation of 18 U.S.C. § 1962(d) committed by the Defendants, including but not limited to lost or reduced profits and lost or diminished equipment valuation.

60.     As a result of their misconduct, Defendants are liable to FutureWei for its losses in an amount to be determined at trial.

61.     Pursuant to RICO, 18 U.S.C. § 1964(d), FutureWei is entitled to recover threefold its damages plus costs and attorneys' fees from Defendants.

COUNT THREE
Breach of Contract as to EOCG

62.     FutureWei incorporates by reference Paragraphs 1 through 62 as if fully repeated here.

63.     On or about August 17, 2007, FutureWei and EOCG executed a valid and enforceable written contract (the "Supply Contract").  The contract dictated that FutureWei would agree to provide to EOCG certain manufactured equipment, software, and services to allow EOCG to

provide telecommunication services to its customers. Specifically, FutureWei would agree to provide Core Network equipment (MSCe, MGW, HLR, BSC), Radio Access Network equipment (BTS), Packet Data Network equipment (PDSN, AAA), and Network Element Management System equipment (M2000) ("CDMA Infrastructure Systems").

64.     FutureWei fully performed its contractual obligations.

65.     On or about December 16, 2008, FutureWei and EOCG entered into a second, but related agreement (hereinafter the "2008 Agreement").  The 2008 Agreement provided that FutureWei would agree to extend certain interest payment deadlines established by the Supply Contract and that EOCG would agree to make certain specified payments to FutureWei pursuant to the terms of those new extended deadlines.

66.     EOCG breached both the Supply Contract and the 2008 Agreement by failing and refusing to make the contractual monetary payments as required by the Supply Contract and/or the 2008 Agreement.

67.     The Supply Contract further provided that EOCG would provide a Letter of Credit to secure 20% of the total equipment cost.  EOCG never produced the Letter of Credit in breach of the Supply Contract.

68.     EOCG's breach caused injury to FutureWei, which resulted in the following damages:

        (a)     FutureWei seeks liquidated damages in the amount of at least $4,676,491.12, under the enforceable liquidated damages clause in the Supply Contract (Article 13);

        (b)     FutureWei is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code Chapter 38 because this is a suit for breach of a written contract.  FutureWei retained counsel, who presented FutureWei's claim to EOCG and Armenta, EOCG's authorized agent.  Presentment of FutureWei's claim was made in writing on April 14,

2009 (via UPS and First Class Mail) and on June 4, 2009 (via Certified Mail, Return Receipt Requested).  Despite having received both notices of claim, EOCG did not tender the amount owed within 30 days after each respective claim was presented.

69.     All conditions precedent to FutureWei's claim for relief have been performed or have occurred.

COUNT FOUR
Quantum Meruit As to MIO Group Incorporated & MIO Group Ltd.

70.     FutureWei incorporates by reference Paragraphs 1 through 70 as if fully repeated here.

71.     Services were rendered to the MIO Defendants directly in that FutureWei manufactured, constructed, assembled, and installed the CDMA Infrastructure Systems which the MIO Defendants have used or are using to provide telecommunication services throughout the Caribbean Islands.

72.     As a direct result of FutureWei's rendition of said services, a benefit was conferred on the MIO Defendants in that they have collected revenues from the sale of such telecommunications services and have, as a result, profited from the use of FutureWei's CDMA Infrastructure Systems.

73.     The MIO Defendants have accepted the benefit of FutureWei's services, but have refused to pay for them.  Specifically, Armenta, MIO Ltd.'s CEO and MIO Inc.'s President and agent, is aware that the CDMA Infrastructure Systems were manufactured, constructed, assembled, and installed by FutureWei under a contract between EOCG and FutureWei, but which EOCG, through Armenta, has refused to comply with.

74.     As a result, the MIO Defendants have been/will be unjustly enriched if allowed to retain the benefit conferred on them without payment for the reasonable value of the services provided by FutureWei as described above.

75.     As a result of the MIO Defendants nonpayment, FutureWei has been damaged and is entitled to recover the reasonable value of the services provided to the MIO Defendants. The reasonable value of the services that FutureWei provided to the MIO Defendants is $4,676,491.12, the outstanding amount due under the Supply Contract.

76.     As a result of Armenta's and the MIO Defendants' failure to pay for the CDMA Infrastructure Systems, FutureWei has been required to retain legal counsel to bring this suit, and is thus entitled to recover reasonable and necessary attorney's fees.

77.     In addition, FutureWei has suffered damages in that Armenta and the MIO Defendants have had the use of the money owed to FutureWei since the date the money was due under the Supply Contract and/or the 2008 Agreement.  FutureWei is therefore entitled to interest on the entire sum, at the rate prescribed by law.

COUNT FIVE
Conversion As to All Defendants

78.     FutureWei incorporates by reference Paragraphs 1 through 78 as if fully repeated here.

79.     On or about June 19, 2008, FutureWei was, and still is the owner of the CDMA Infrastructure Systems it manufactured, constructed, assembled and installed, and has the right of possession of this property.   Specifically, FutureWei's right of possession arises from the Defendants' failure to pay for the telecommunication infrastructure and equipment as provided by the Supply Contract and/or the 2008 Agreement.

80.     Defendants have unlawfully and without authority assumed wrongful dominion and control over FutureWei's CDMA Infrastructure Systems inconsistent with FutureWei's rights to this property.   Specifically, Defendants Armenta and EOCG granted the MIO Defendants the right to use the CDMA Infrastructure Systems to deliver telecommunications services throughout the Caribbean Islands.   Defendants have no right to maintain and use such property and

apparently have no intent to return it.   On or about June 2009, FutureWei demanded that Defendants Armenta and EOCG return the property to it.  Defendants have refused to return the property.

81.    Defendants are liable, jointly and severally, for conversion of FutureWei's property. Armenta is the CEO and majority shareholder of EOCG and thus knew that FutureWei owned and had legal right over the property that EOCG converted.  Since Armenta had knowledge of this conversion, and benefited from the wrongfully acquired property, Armenta is jointly and severally liable to FutureWei.

82.    The MIO Defendants are jointly and severally liable because they received and/or are using the property with the knowledge that the property was wrongfully acquired by EOCG and/or Armenta.  Armenta is the President of MIO Inc. and the CEO of both MIO Ltd. and EOCG.   Accordingly, Armenta, acting as the MIO Defendants' agent, knew the property acquired from EOCG was wrongfully converted.

83.    FutureWei thus seeks the fair market value of the property at the time and place of the conversion and interest from June 2008 at the prejudgment rate of interest.

84.    Defendants' conversion of the property, as alleged above, was fraudulent and/or malicious in that Defendants specifically intended to cause substantial injury to FutureWei by deriving financial benefits from the use the CDMA Infrastructure Systems without having paid for the manufacture, construction, assembly and installation of said property. Accordingly, FutureWei asks that exemplary damages be awarded against Defendants.

COUNT SIX
Fraud As to Armenta and/or EOCG

85.    FutureWei incorporates by reference Paragraphs 1 through 85 as if fully repeated here.

86.     Defendants EOCG and Armenta entered into a binding agreement with FutureWei under the false representation that EOCG would pay FutureWei for the CDMA Infrastructure Systems provided to EOCG.   FutureWei relied upon the representations regarding EOCG's financial status, corporate structure, experience, existing infrastructure, existing contacts in its decision to enter in the CDMA Infrastructure Systems, and further relied upon the representations regarding EOCG's ability to pay for the equipment and services by FutureWei in a timely manner and as provided by the Supply Contract.   Armenta's and EOCG's representations were material and false.   Armenta's and EOCG's representations were false statements of fact because they mislead FutureWei into believing that Armenta and EOCG had the resources and the intent to fulfill their obligations under the Supply Contract.   Defendants Armenta and EOCG made false promises of future performance because after the parties agreed to extend certain deadlines of payment, Armenta and EOCG had no intention to perform and still refused to perform.   Armenta and EOCG also made false promises of future performance with no intention of performing them as evidenced by their formation of MIO Inc.,  one of the conduits by which to defraud FutureWei. FutureWei relied upon Armenta's and EOCG's representations and has suffered damages as a result.   Accordingly, Armenta and EOCG are liable for fraud and fraud in the inducement, and FutureWei is entitled to recover its actual damages.

87.     Furthermore, FutureWei alleges that because Defendants knew that the representations described above were false at the time they were made, the representations were grossly negligent and constitute conduct for which the law allows the imposition of exemplary damages. In this connection, FutureWei will show that it has incurred significant expenses, including attorney's fees, in the investigation and prosecution of this action.

<u>COUNT SEVEN</u>
<u>Fraudulent Transfer As to all Defendants</u>

88.     FutureWei incorporates by reference Paragraphs 1 through 88 as if fully repeated here.

89.     Defendants EOCG and Armenta transferred the CDMA Infrastructure Systems and/or the right to use the CDMA Infrastructure Systems with the intent to defraud FutureWei.   On information and belief, Defendants EOCG and Armenta transferred the property with the intent of hiding profits from the use of said property and with the intent of preventing FutureWei from obtaining payment from EOCG under the Supply Contract and the 2008 Agreement. Specifically, on information and belief, EOCG and Armenta created MIO Inc. for the sole purpose of allowing MIO Inc. – not EOCG – to provide telecommunications services to consumers.   As such, MIO Inc. (and MIO Ltd.) – not EOCG – received profits from said services to intentionally cause EOCG to become insolvent and prevent FutureWei from collecting under the Supply Contract and the 2008 Agreement.

90.     The MIO Defendants, through their agent Armenta, obtained the CDMA Infrastructure Systems (or the right to use said infrastructure and equipment) from EOCG with notice of EOCG and Armenta's intent to defraud FutureWei.   Accordingly, FutureWei alleges that the MIO Defendants are the business associates of EOCG and had knowledge, through Armenta, that EOCG was in serious financial difficulty at the time of the transfer described above.

91.     As a result of the fraudulent transfer, FutureWei has been damaged in the amount of $4,676,491.12.

92.      In addition to other damages, under Business and Commerce Code Section 24.013, FutureWei is entitled to costs and reasonable attorney's fees as are equitable and just.

COUNT EIGHT
Piercing the Corporate Veil

93.     FutureWei incorporates by reference Paragraphs 1 through 93 as if fully repeated here.

94.     FutureWei alleges that the corporate veil of EOCG, MIO Ltd., and/or MIO Inc., all closely-held corporations, should be pierced and Defendant Gilbert Armenta held jointly and severally liable to FutureWei on the ground that the corporate entities were used by Armenta as a sham to perpetuate fraud on FutureWei.  Specifically, as the controlling shareholder, Armenta funneled revenues and profits derived from the use of FutureWei's CDMA Infrastructure Systems away from EOCG and into MIO Ltd. and/or MIO Inc., which was created immediately after the launch of the infrastructure system.

95.     Moreover, all Defendants have failed to follow corporate formalities, share the same address and offices, and are believed to have the same corporate officers and directors.

96.     To the extent Armenta does not so control the actions of EOCG, Mio, Ltd., and Mio, Inc. that are complained of herein, Armenta intentionally mislead FutureWei about the nature of the Defendants' corporate structure, which resulted in serious confusion about the manner and capacity in which the parents, affiliates, or subsidiaries were acting.  This was accomplished through misleading statements disseminated through correspondence with FutureWei, through conversations with FutureWei's executives and employees, and through the corporate advertising, marketing, and other materials provided to FutureWei's executives and employees. To the extent that a corporate shell separates Armenta from EOCG, MIO Ltd., MIO Inc., and any other corporate entity under which Armenta operates, such corporate formalities should be disregarded.

97.     Defendant Armenta has created this complex and confusing corporate structure to avoid his duties to business partners, associates, and corroborators, and to shelter his wrongdoings from judicial or administrative oversight.

## PRAYER FOR RELIEF

98.     WHEREFORE, on the basis of the foregoing, FutureWei prays that this Court:

(a)     Grant to FutureWei all actual and nominal damages against Defendants in an amount reasonable and commensurate with the losses upon FutureWei by Defendants' unlawful conduct, with prejudgment interest as provided by law;

(b)     Grant FutureWei exemplary and/or punitive damages as provided by law;

(c)     Treble damages and attorneys fees pursuant to 18 U.S.C. §1964(c) and 18 U.S.C. §1964(d).

(d)     Grant FutureWei costs of suit and reasonable attorney's fees as are equitable and just;

(e)     Grant FutureWei postjudgment interest as provided by law from the date of judgment until paid;

(f)     Grant FutureWei other and further relief to which FutureWei may be justly entitled; and

(g)     Enter an Order returning the CDMA Infrastructure System and related equipment to FutureWei.

## JURY DEMAND

99.     Plaintiff respectfully requests a trial by jury.

Respectfully submitted,


/s/ Jeffrey J. Cox
**JEFFREY J. COX**
Texas State Bar No. 04947530
e-mail: jcox@hdbdk.com
**YESENIA E. CARDENAS-COLENSO**
Texas State Bar No. 24047542
e-mail: ycardenas@hdbdk.com
**HARTLINE, DACUS, BARGER, DREYER &
   KERN, L.L.P.**
6688 North Central Expressway, Suite 1000
Dallas, Texas  75206
(214) 369-2100
(214) 369-2118 (fax)


**ATTORNEYS FOR PLAINTIFF
FUTUREWEI TECHNOLOGIES, INC. d/b/a
HUAWEI TECHNOLOGIES (USA)**