IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FUTUREWEI TECHNOLOGIES INC., § | | |
| D/B/A HUAWEI TECHNOLOGIES (USA) § | | |
| Plaintiff, § | | |
| § | | |
| V. § | CAUSE NO. 4:09CV455 | |
| § | | |
| E. OLIVER CAPITAL GROUP, LLC, § | | |
| MIO GROUP, LTD., § | | |
| MIO GROUP INCORPORATED, and § | | |
| GILBERT R. ARMENTA, § | | |
| Defendants. § | | |

**REPORT AND RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

Now before the Court is Defendants' Motion to Dismiss and Compel Arbitration (Dkt. 9). The Court finds that the motion should be GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff Futurewei Technologies Inc. ("Futurewei") manufactures, installs, and services telecommunications equipment, specifically devices used in providing wireless telephone and data service under the CDMA standard. Defendants E. Oliver Capital Group, LLC ("EOCG"), MIO Group Ltd. ("MIO Ltd."), and MIO Group Incorporated ("MIO Inc.") provide cellular telephone and data service on several Caribbean islands. Defendant Gilbert R. Armenta ("Armenta") is the principal owner and manager of EOCG, MIO Ltd., and MIO Inc., either directly or through subsidiaries.

1

Beginning in 2007, Armenta, acting on behalf of EOCG, approached Plaintiff with a proposal to install and service telecommunications equipment on several Carribean islands. According to Plaintiff, Armenta made many false or misleading statements to its representatives about EOCG's financial situation and sophistication. In reliance on these statements, Plaintiff entered into a Supply Contract with EOCG to install and service telecommunications equipment on several Caribbean islands. As part of the Supply Contract, Plaintiff was to receive periodic payments from EOCG to fund the project.

Shortly after installation was complete, EOCG transferred ownership of the equipment to MIO Inc. and/or MIO Ltd., two companies established after the Supply Contract between EOCG and Plaintiff was executed. According to Plaintiff, the revenue from the operation of the telecommunication installations thus went to MIO Inc. and/or MIO Ltd., and, because it was undercapitalized, EOCG was allegedly unable to make its scheduled payments under the Supply Contract.

Plaintiff then brought the above-styled action against Defendants. Plaintiff asserts breach of contract claims against EOCG, RICO act violations as to all Defendants, fraudulent transfer as to all Defendants, conversion as to all Defendants, fraud as to Armenta and/or EOCG, and quantum meruit as to MIO Inc. and MIO Ltd. Plaintiff also seeks to pierce the corporate veil as to EOCG, MIO Inc. and MIO Ltd. Essentially, Plaintiff alleges that it is the victim of a fraudulent scheme concocted by Armenta, with EOCG, MIO Inc., and MIO Ltd. as mere artifices formed in furtherance of the scheme. Plaintiff alleges that there is such "unity of interest and ownership" between Armenta

and these corporate structures that "the separate personalities of the corporation and the individual no longer exist." Dkt. 1, p. 6-7.

In their first responsive filing, Defendants brought the present motion asking the Court to dismiss or stay Plaintiff's claims and refer all claims to arbitration. In support of this motion, Defendants cite to the Supply Contract between Plaintiff and EOCG which was signed by Armenta and contains an arbitration provision. Plaintiff argues that at least some of its claims should not be referred to arbitration because Armenta, MIO Ltd., and MIO Inc. are not parties to the Supply Contract or its included arbitration agreement.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) "is a congressional declaration of liberal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 3 of the FAA, 9 U.S.C. § 3, provides for a mandatory stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. *Midwest Mech. Contractors Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986).[1]

---

[1] 9 U.S.C. § 3 reads:
> If any suit or proceeding brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement providing the applicant for the stay is not in default in proceeding with such arbitration.

In ruling on a motion to stay under Section 3, a court must first determine whether there is a written agreement to arbitrate and then whether any of the issues raised are within reach of that agreement. *Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). In determining whether there is an agreement, a court may consider fraud relating to adoption of an arbitration provision but must leave to an arbitrator any issues of fraud relating to the agreement as a whole. *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992).

When determining whether an issue is within reach of a written agreement to arbitrate, the Fifth Circuit distinguishes between broad and narrow arbitration clauses. *Hornbeck*, 981 F.2d at 754. If the clause is broad, the action should be stayed and the arbitrators allowed to determine whether the dispute falls within the clause. *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985). If the clause is narrow, the court should not refer the action to arbitration or stay proceedings unless the court determines that the dispute falls within the clause. *Id*. However, "an order to arbitrate [a specific] grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419, 89 L. Ed.2d 648 (1986).

When a party to an arbitration agreement brings suit against a party that did not join in the arbitration agreement, as has happened here, the court must determine whether the non-signatories may invoke the arbitration agreement. When determining which non-signatory parties may invoke

an arbitration agreement, the doctrine of equitable estoppel applies to prevent a signatory from asserting a non-signatory's liability in connection with a contract without also affording it the benefit of the contract's arbitration provision. *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004). Equitable estoppel may allow a non-signatory to invoke an arbitration agreement in two circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the signatory and one or more of the signatories of the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *M.S. Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). Because the signatories to arbitration agreements have already agreed in writing to arbitration of claims relating to the agreement, it is foreseeable, and therefore reasonable, to broaden the scope of the arbitration agreement when signatories bring related claims against non-signatories. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003).

Depending on the specific facts of a case,[2] non-signatories may also have access to arbitration agreements through the alter-ego doctrine if the corporate veil between the non-signatory and a signatory may be pierced. *Bridas*, 345 F.3d at 356 (citing *Thomson-CSF*, 64 F.3d at 776). The veil may be pierced only if the non-signatory exercised complete control over the signatory with respect to the transaction at issue and used that control to defraud or wrong the counterparty seeing to pierce the veil. *Bridas*, 345 F.3d at 359.

When a plaintiff brings claims against multiple defendants and some claims are referred to arbitration, the remaining claims may be stayed pending arbitration if litigation would undermine the arbitration proceedings. *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002). Specifically, when the suit against the non-signatory relies upon the same operative facts and is inherently inseparable from the claims against a signatory, the district court may grant a stay pending arbitration at its discretion if proceeding would thwart the federal policy in favor of arbitration. *Id.*

## ANALYSIS

To determine whether to refer all or part of the above titled action to arbitration, the Court must determine which Defendants, if any, may invoke the arbitration clause from the Supply Contract, and, for each party able to invoke the arbitration clause, which causes of action should be referred to arbitration.

---

[2] "[A] parent corporation and its subsidiary lose their distinct corporate identities when their conduct demonstrates a virtual abandonment of separateness." *Thomson-CSF, S.A. v. American Arbitration Ass'n.*, 64 F.3d 773, 778 (2d Cir. 1995).

### *1.     Rights of Defendants to Compel Arbitration*

Each of Defendants may compel arbitration as to Plaintiff's claims against it in accordance with both prongs of the *Grigson* test and the alter ego doctrine.  By the first prong of the *Grigson* test, a signatory to an arbitration agreement may be compelled by equitable estoppel to arbitrate claims against a non-signatory when it relies on a contract containing an arbitration agreement as part of a claim against a non-signatory.  *Grigson*, 210 F.3d at 527.

In its complaint, Plaintiff relies upon the terms of the Supply Contract between Futurewei and EOCG in making its fraudulent transfer count, its conversion count, and its quantum meruit count.  Plaintiff's fraudulent transfer count, made as to all Defendants, alleges damages in the amount of the sum outstanding on the Supply Contract between Futurewei and EOCG.  Dkt. 1, p. 24.  Plaintiff's conversion count, made as to all Defendants, alleges that Futurewei's right of possession of the telecommunication equipment at issue, and thus the foundation of its conversion claim, arises from the Supply Contract between Futurewei and EOCG.  Dkt. 1, p. 21.  Plaintiff's quantum meruit claim, made as to MIO Inc. and MIO Ltd., relies on the Supply Contract between Futurewei and EOCG to fix the value of the benefit received by MIO Inc. and MIO Ltd.  Dkt. 1, p. 21.  Because Plaintiff relied on the Supply Contract with EOCG as part of its claims against non-signatories Armenta, MIO Inc., and MIO Ltd.  Therefore, Armenta, MIO Inc., and MIO Ltd. may invoke the arbitration agreement and compel arbitration under the first prong of *Grigson*.

By the second prong of the *Grigson* test, a signatory to an arbitration agreement may be compelled by equitable estoppel to arbitrate claims against non-signatories when it alleges

interdependent, concerted misconduct on the part of the non-signatories and at least one signatory. *Grigson*, 210 F.3d at 527. Here, Plaintiff alleges that Armenta, "mastermind and architect" of a "fraudulent scheme involving millions of dollars," constructed a corporate shell named EOCG, falsified its financial records in order to obtain telecommunications equipment from Plaintiff, transferred said equipment to corporate shells MIO Inc. and MIO Ltd., and defaulted on EOCG's obligations to Plaintiff. Plaintiff's allegations depict a signatory (and the corporate officer who signed on behalf of the signatory) acting in concert with non-signatories to defraud Plaintiff and deprive Plaintiff of the benefit of its bargain. Accordingly, non-signatories Armenta, MIO Inc., and MIO Ltd. may compel arbitration.

Additionally, the Court notes that Plaintiff has alleged in its complaint that Defendants are not four separate entities, but rather a single entity. Specifically, Plaintiff alleges that "there is such unity of interest and ownership between Amenta and [EOCG, MIO Ltd., and MIO Inc.] that the separate personalities of the corporation[s] and the individual no longer exist." Dkt. 1, p. 6, 7. This factual allegation is binding upon Plaintiff, who cannot both allege that Defendants are part of the same entity in his complaint and argue that each Defendant is a distinct entity for the purpose of defeating Defendants' motion to compel arbitration. *See*, *e.g.*, *White v. ARCO/Polymers, Inc.*, 720 F.3d 1391, 1396 (5th Cir. 1983) ("Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them."); *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983) ("The facts alleged or admitted in the live pleadings of a party are accepted as true by the court and the jury and are binding on the pleader."). Further, Because Plaintiff, a signatory, seeks to pierce the corporate veil separating

signatory EOCG from non-signatories Armenta, MIO Inc., and MIO Ltd., those non-signatories also should have the benefit of the arbitration agreement if they seek it. *See Bridas*, 345 F.3d at 359. Plaintiff admits that EOCG, as a party to the original agreement, may invoke the arbitration agreement. To the extent that any of Defendants may invoke the arbitration agreement, they all may invoke the arbitration agreement. Accordingly, Amenta, EOCG, MIO Inc., and MIO Ltd. may each invoke the arbitration agreement to compel arbitration.

### *2.    Causes of Action Referable to Arbitration*

Having found that each defendant may compel Arbitration, the Court next considers which causes of action are covered by the arbitration agreement. The arbitration agreement reads as follows:

> All disputes, controversies or claims arising out of or in connection with or in relation to this Contract or its negotiation, performance, breach, existence, or validity, whether contractual or tortious, shall be submitted to the American Arbitration Association for arbitration, under its rules as in force and effect on the date of this Contract. The place of the arbitration shall be in the United States as agreed between the parties. The arbitration proceedings shall be conducted in English language. The award of the arbitration shall be final and binding against the Parties hereto.

Dkt. 9-3, p. 2. This arbitration clause is broad, encompassing all controversies related to the agreement whether arising from the contract itself or from tortious behavior. *See Hornbeck*, 981 F.2d at 754. Because the arbitration clause is broad, this action should be stayed so that the arbitrator may determine which claims fall within its reach and arbitrate those claims before litigation continues. *See Sedco*, 767 F.2d at 1145 n. 10. Accordingly, this action should be stayed as to all

counts and all Defendants until the completion of arbitration proceedings.

## RECOMMENDATION

Based upon the foregoing, the Court recommends that the Defendants' Motion to Dismiss and Compel Arbitration should be DENIED in part and GRANTED in part, and that Plaintiff's claims against the Defendants be referred to arbitration and stayed until the arbitration has been completed.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 15th day of April, 2010.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE